*John T. Hazelrigg, for appellant.*

*Rodman, for appellees.*

---

A. T. LESLIE'S ADM'R ET AL. *v.* B. M. CLAY.

**Vendor and Purchaser—Partition.**

Where C. and I., purchasers of land, agree that I. shall have the eastern half of the land, such portion "to contain two hundred twenty-five acres if the same should be contained in the following boundary (setting forth the boundary)," and they agreed to convey to each other their respective halves or portions after the same shall have been surveyed, if it afterwards appears that the portion set off to I. does not contain half of the land, the court should order a partition of the land by commissioners, according to quantity and quality, giving I. the eastern half of the tract.

APPEAL FROM HENDERSON CIRCUIT COURT.

March 10, 1874.

OPINION BY JUDGE PETERS:

By the terms of the deed from Millett and wife to Clay and Ingram, they conveyed to the latter jointly a tract of land in Hen-

derson county, estimated to contain four hundred and seventy-four and three-fourths acres; and in a writing subsequently signed by the vendees, it is recited, that they had purchased the land from F. Millett in partnership, and that his deed vested in them a joint interest in the entire tract; and by the terms of that writing the said Clay and Ingram agree that Ingram is to have the eastern "half, or that half bordering on John Bigley's land or farm, to contain two hundred and twenty-five acres, if the same should be contained in the following boundary: commencing at a stone marked F. M. & B., thence with the line of the Millett tract until it reaches a ditch passing through the Millett farm, thence up the ditch as far as it extends, and after its termination, the same course until it strikes the Harolson ferry road, thence with the road to the beginning." It was also agreed that the parties should convey to each other their respective halves or portions after the same shall have been surveyed.

After the execution of this writing, the parties entered upon the parcels of land up to and on the respective sides of the line as therein described, and held in severalty; but they did not then have the land surveyed, nor did they execute deeds of partition. A few years afterwards, Ingram executed a mortgage to Stone, and also to Leslie, on his part of said land, to secure them against loss from having become bound as his sureties in certain debts. In the legal proceedings of Stone and Leslie against Ingram to foreclose their mortgages, cross-pleadings were filed by Ingram and Stone against Clay, in which they allege that the boundary taken by Ingram did not contain 225 acres; that the partition was unequal and unjust; that Clay had nearly 100 acres more in the part he claimed, than Ingram had, and they prayed for an equitable division, etc. This Clay resisted, and on final hearing of this branch of the case in the court below, it was adjudged that each party should retain the land on the respective sides of the line which should be the dividing line between them, and that deeds of partition should be made accordingly, and from that judgment Stone and Ingram have appealed.

From a report of a survey made in the case, it appears that there are 472 1-2 acres in the tract, and by the judgment of the court, Clay gets 279 1-2 acres and Ingram gets only 193 acres, making a difference of 86 1-2 acres, when it is neither alleged nor proved that the part Ingram gets is worth any more per acre than that which

Clay gets, and it is shown that Ingram paid as much for the land as Clay did; but it is contended that the parties agreed upon this as the dividing line between them, and that the court has no power to change their contract, and make a different one for them.

The question then presents itself as to whether that is the contract of the parties. By the terms of that contract, Ingram is to have "the eastern half, or that half bordering on John Bigley's land or farm." If they had closed the writing with that sentence there would be no doubt that Ingram would be entitled to the eastern half, or the one-half of the whole farm adjoining John Bigley. Nothing less than a half thus far was stipulated for. Now how far does the following sentence qualify or change the preceding one? He, Ingram, is to have the eastern half, "to contain two hundred and twenty-five acres, if the same," that is, if 225 acres are contained in the designated boundary.

But if that quantity is not contained in the boundary set forth, is Ingram to take the land contained in that boundary at all events, without regard to the quantity therein, and without regard to the quantity, in the whole tract? There is no such agreement in express terms. Nor do we think, according to a rational and consistent interpretation of the whole instrument, such effect should be given to it. Whenever they speak of their respective parts, they say each one's half, or portion, using these words as synonyms, and they agree to convey "to each other their respective halves, or portions, when the same shall be actually surveyed."

Why, if quantity was not to be ascertained, nor material, was it necessary to have an actual survey of each portion or half? Millett's deed to them described the land by metes and bounds, many of the corners, if not all of them, being identified by set stones. The whole could have been completed by running one line, beginning at the set stone marked "F. M. & B.," running with the Millett line to another stone marked with the same letters, thence with Millett's line to a ditch, thence with the ditch as far as it extends, thence the same course continued till the line strikes the Harrolson ferry road. Indeed, it might have been only necessary to run from the second stone called for to the Harrolson ferry road to locate the line and to ascertain its length. Therefore the partition was finally agreed upon by a survey of the whole tract, otherwise it would seem that this would not have been necessary.

According to our interpretation of the writing, Ingram agreed to take all the land east of the designated line, provided there were 225 acres of it, and on no other condition; and as there were not so many acres in the boundary, the court should have ordered a partition of the land by commissioners, according to quality and quantity, giving to Ingram his half on the eastern part of the tract, adjoining the Bigley farm, and Clay's on the western side. Wherefore the judgment is reversed, and the cause is remanded with directions that the land be divided and partitioned equitably between the parties according to quality and quantity, setting apart to Ingram his part on the eastern side of the tract, and Clay's on the western side, and for further proceedings consistent herewith.

*Turner & Trafton, for appellants.*

*Evans, for appellee.*